IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DENNIS J. HARLOW,

        Plaintiff,

        v.                         Civil Action No. 3:05-CV-133

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION
## SOCIAL SECURITY

### I. Introduction

A.    Background

      Plaintiff, Dennis J. Harlow, (Claimant), filed his Complaint on December 13, 2005, seeking Judicial review pursuant to 42 U.S.C. § 405(g) of an adverse decision by Defendant, Commissioner of Social Security, (Commissioner).[1]  Commissioner filed her Answer on April 26, 2006.[2]   Claimant filed his Motion for Summary Judgment on May 26, 2006.[3]  Commissioner filed her Motion for Summary Judgment on June 22, 2006.[4]  Claimant filed a Reply on July 6, 2006.[5]

B.    The Pleadings

---

[1] Docket No. 1.

[2] Docket No. 9.

[3] Docket No. 10.

[4] Docket No. 11.

[5] Docket No. 12

1. <u>Claimant's Motion for Summary Judgment</u>.

2. <u>Commissioner's Motion for Summary Judgment</u>.

C.    <u>Recommendation</u>

I recommend that:

1.    Claimant's Motion for Summary Judgment be GRANTED and the case REMANDED to Commissioner for further consideration of the effect of Claimant's anxiety disorder in combination with other impairments and of the weight that should be accorded to the opinion of Claimant's treating physician, Dr. Humphrey.

2.    Commissioner's Motion for Summary Judgment be DENIED for the same reasons as stated above.

## II. Facts

A.    <u>Procedural History</u>

Claimant filed his application for Disability Insurance Benefits and Supplemental Security Income on June 20, 2004, alleging disability since May 4, 2004. The application was denied and initially and on reconsideration. Claimant requested a hearing before an ALJ and received a hearing on August 5, 2005. On August 22, 2005, the ALJ issued a decision adverse to Claimant. Claimant requested review before the Appeals Council, but this request was denied. Claimant filed this action, which proceeded as set forth above.

B.    <u>Personal History</u>

Claimant was 47 years old on the date of the August 5, 2005 hearing before the ALJ. Claimant has a high school education. Claimant has prior relevant work experience as a boiler maker.

C.    Medical History

The following medical history is relevant to the time period during which the ALJ

concluded that Claimant was not under a disability: May 4, 2004 – August 22, 2005.[6]

**Physical Residual Functional Capacity Assessment, 8/20/04, Tr. 101**
Exertional limitations
        Occasionally lift and/or carry 50 pounds
        Frequently lift and/or carry 25 pounds
        Stand and/or walk about 6 hours in an 8 hour work day
        Sit for a total of about 6 hours in an 8 hour work day
        Push and/or pull: unlimited

Postural limitations: none established
Manipulative limitations: none established
Visual limitations: none established
Communicative limitations: none established
Environmental limitations: none established

**James A. Powell, PT, 6/21/04, Tr. 143**
Assessment: The patient has good rehab potential.  The patient and his family need to be
educated.  The patient needs to normalize his mobility and stability, decrease his signs and
symptoms, and return to the previous pain free functional status.

**Dennis Burton, M.D., 5/4/04, Tr. 144**
Impression: degenerative change and bulging annuli as noted with left paramedian
subligamentous herniation at C6-7.

**David Lacey, M.D., 9/24/04, Tr. 146**
Conclusions: chronic, active, left C7 radiculopathy, possible C8 involvement, bilateral ulnar
neuropathies, with the right focal at the elbow and an inability to localize the left.

**Frederick A. Humphrey, D.O., 8/9/04, Tr. 156**
Special Senses: The patient has normal vision, hearing, and speech
Musculoskeletal: The patient has abnormal gait and sensation, fine motor ability, gross motor

_____

[6] Much of the evidence in the record comes from before Claimant's alleged onset date of
disability.  Commissioner asserts this evidence is relevant "for background purposes only."
Def.'s Br. at 2.  Yet this is incorrect, as evidence obtained prior to the alleged onset date may be
relevant to the instant claim.  See Tate v. Apfel, 167 F.3d 1191, 1194 n.2 (8th Cir. 1999); Burks-
Marshall v. Shalala, 7 F.3d 1346, 1348 n. 6 (8th Cir. 1993); Williams v. Barnhart, 314 F. Supp.
2d 269, 272 (S.D.N.Y. 2004).

ability, joints, and range of motion. The patient has normal muscle bulk.

Neurological: The patient has abnormal reflexes, sensory deficits, motor strength, coordination, and mental status. The patient has normal frequency of seizures.

Respiratory: The patient has abnormal breath sounds, dyspnea, and orthopnea. The patient has normal cyanosis and edema.

Cardiovascular: The patient has normal heart sounds, chest pain, evidence of congestive heart failure, extremities, and circulation

Digestive: The patient has a normal abdomen, ascites, skin/integumentary system, genito-urinary system, and age appropriateness of development.

**Dennis Burton, M.D., 5/4/04, Tr. 163**

Impression: degenerative change and bulging annuli as described with borderline small subligamentous herniation L5-S1.

**Alexander Minard, M.D., 2/1/05, Tr. 164**

Impression: neck pain with bilateral cervical radicular pain, true cervical radiculopathy on the right, cervical degenerative disk disease, status post laminectomy, low back pain with bilateral leg pain.

**Psychiatric Review Technique, 8/20/04, Tr. 169**

The patient has an anxiety-related disorder of GAD.

Functional limitation

      Restriction of activities of daily living, difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence, and pace: mild

      Episodes of decompensation, each of extended duration: none

**Physical Residual Functional Capacity Assessment, 2/23/05, Tr. 185**

Exertional limitations

      Occasionally lift and/or carry 20 pounds

      Frequently lift and/or carry 10 pounds

      Stand and/or walk for a total of about 6 hours in an 8 hour work day

      Sit for a total of about 6 hours in an 8 hour work day

      Push and/or pull: unlimited

Postural limitations

      Climbing ramps/stairs, balancing, stooping, kneeling, crouching, crawling: occasionally

      Climbing ladders, ropes, scaffolds: never

Manipulative limitations: none established

Visual limitations: none established

Communicative limitations: none established

Environmental limitations:

Extreme heat, wetness, humidity, noise, fumes, odors, gases, poor ventilation: unlimited
Extreme cold, vibration, hazards: avoid concentrated exposure

**John B. Stockel, M.D., 10/30/01, Tr. 194**
Conclusion: The patient has significant spondyloarthropathy in the mild to lower cervical spine.
The spinal cord is impinged upon at C4-5, C5-6, and C6-7. Abnormal signal is seen within the
substance of the spinal cord at these levels suggesting the possibility of either a traumatic injury
or chronic myelomalacia.

**Frederick Humphrey, D.O., 4/8/03, Tr. 197**
Admitting diagnosis: pancreatitis
Discharge diagnosis: pancreatitis, irritable bowel syndrome, chronic gastritis, chronic obstructive
pulmonary disease, generalized anxiety disorder, external hemorrhoids

**Frederick Humphrey, D.O., 3/30/03, Tr. 198**
Admitting diagnosis: respiratory insufficiency, exacerbation of chronic obstructive pulmonary
disease
Final diagnoses: acute tracheobronchitis, chronic obstructive pulmonary disease, unstable low
back syndrome, generalized anxiety disorder, hypertension

Impression: multiple contusions status post motor vehicle accident, fracture of the spinous
process C7, and compression fracture of T12.

**(Unsigned), 9/14/99, Tr. 200**
Summary: mild degenerative arthritic changes are present in the lumbar spine.

**Jack Koay, M.D., 4/29/04, Tr. 201**
Clinical impression: sprain type of lumbar spine associated with degenerative discs at L3-4 and
L4-5 levels and focal subligamentous herniation and L5-S1 level, pain of the neck associated with
the previous multilevel cervical laminectomy performed on 1/17/02.

**Alexander Minard, M.D., 3/9/05, Tr. 215**
Preoperative diagnosis: cervical radiculitis, cervical disc herniation, and cervical degenerative
disc disease.

**Alexander Minard, M.D., 3/11/05, Tr. 217**
Impression: The patient has neck pain with bilateral cervical radicular pain. He has true cervical
radiculopathy on the right. He has cervical degenerative disk disease and is status post a
laminectomy. The patient has low back pain with bilateral leg pain.

**James Dauphin, M.D., 4/14/05, Tr. 229**
Diagnosis: The patient suffers from cervical and lumbar radiculopathy.

**Rammy Gold, M.D., 6/20/05, Tr. 247**

Impression: There is moderate multi-level spinal stenosis most pronounced at T12-L1, L3-4, and L4-5. The spinal stenosis is mainly due to congenitally short pedicles in association with facet joint bony overgrowth and hypertrophy of the ligamentum flavum. There is a mild super-imposed generalized disc bulge at L4-5. There is a moderate multi-level bilateral neural foraminal encroachment most pronounced from L3 through S1. There is a right posterior paracentral spur-disc complex at T12-L1 resulting in leftward displacement of the conus medullaris and moderate spinal stenosis. There is a mild focal central posterior disc bulge at L5-S1 without neural impingement.

**Rammy Gold, M.D., 5/23/05, Tr. 249**
Impression: There are mild degenerative changes with slight spurring off the coronoid process.

**Rammy Gold, M.D., 5/23/05, Tr. 250**
Impression: The patient is status post previous laminectomies which the physician believes extend from C3 to C7, the alignment is anatomic and no instability is noted during flexion or extension, and there is mild degenerative disc disease with slight narrowing and spurring of C5-6.

**Rammy Gold, M.D., 6/20/05, Tr. 253**
Impression: advanced hypertrophic degenerative changes from L3 through S1, minimal disc space narrowing at L3-4

**Rammy Gold, M.D., 6/20/05, Tr. 254**
Impression: The patient is status post laminectomies from C3 through C7. He has mild multilevel degenerative disc disease most pronounced at C4-5 and C5-6. There is facet joint bony overgrowth throughout the cervical spine along with uncovertebral spurring. There is lateral narrowing of the spinal canal from C4 through C7. There is slight lateral compression of the spinal cord. There is moderate bilateral neural foraminal encroachment from C4 through C7, slightly more pronounced on the right.

**Rammy Gold, M.D., 6/20/05, Tr. 256**
Impression: There is moderate multilevel spinal stenosis most pronounced at T12-L1, L3-4, and L4-5. The spinal stenosis is mainly due to congenitally short pedicles in association with facet joint bony overgrowth and hypertrophy of the ligamentum flavum. There is a mild superimposed generalized disc bulge at L4-5. There is moderate multilevel bilateral neural foraminal encroachment most pronounced from L3 through S1. There is a right posterior paracentral spur-disc complex at T12-L1 resulting in leftward displacement of the conus medullaris and moderate spinal stenosis. There is a mild focal central posterior disc bulge at L5-S1 without neural impingement.

**Michael Morehead, M.D., 1/8/04, Tr. 258**
Impression: obstructive sleep apnea

**Michael Morehead, M.D., 2/10/04, Tr. 260**
Summary: severe obstructive sleep apnea, restricted REM and slow wave sleep, abnormal EEG,

drug-induced excessive spindles.

**Michael Morehead, M.D., 2/24/04, Tr. 261**
Summary: obstructive sleep apnea controlled with CPAP, 11 cm recommended, restricted REM sleep, excessive spindles, drug-induced

**Rammy Gold, M.D., 6/20/05, Tr. 264**
Impression: The patient has status post laminectomies from C3 through C7 and mild multilevel degenerative disc disease most pronounced at C4-5 and C5-6. There is facet joint bony overgrowth throughout the cervical spine along with uncovertebral spurring. There is slight lateral compression of the spinal cord. There is no compression of the spinal cord in the AP direction. There is moderate bilateral neural foraminal encroachment from C4 through C7, slightly more pronounced on the right.

D.    Testimonial Evidence

        Testimony was taken at the August 5, 2005, hearing before the ALJ. The following

portions of testimony are relevant to the disposition of this case.

[EXAMINATION OF CLAIMANT BY ALJ]

        Q        Do you smoke?

        A        Yes, sir, I do.

                                *                *                *

EXAMINATION OF CLAIMANT BY ATTORNEY:

        Q        Can you describe the pain that you have in your back and neck? Is it sharp,

stabbing? How would you describe it?

        A        Well, it hurts generally about all the time on a scale of one to five - - or one to ten

about a five. Then when I take my medication, it goes down to a two. But, reaching up trying to

climb and stuff, it hurts up through the side. And the legs, I can't really get them up much, but I

can still, you know, do little stuff like I can ride along and now for a little bit and get off the

mower and take a break. And I do little stuff here and there, but generally it hurts most all the

time.

Q      So, you have pain constantly?

A      Yes, ma'am.

Q      Do you lie down and rest during the day?

A      Yes, ma'am, I do a couple times a day.

Q      How often do you lie down for?

A      Anywhere from an hour to a half an hour.

                    *              *              *

[EXAMINATION OF CLAIMANT BY ALJ]

Q      Can you get your arms above your head?

A      Yes, sir, I can for short periods of time.

Q      Okay.  What do you do for enjoyment other than riding the lawnmower?

A      I do hunt and fish, sir.

Q      Are you able to do that, yet, some?

A      Yeah, to a certain extent.  I can still get around a little bit, but nothing like I used

to.  I used to walk trout streams a lot and everything, but I usually just hit the holes where the

truck dumps them in anymore.

Q      Do you take your daughter to school?

A      Yes, sir, I do.

Q      Is your wife - - does she have medical problems?

A      Yes, sir, she does.

Q      Do you help her?

A       Yes, sir, I do.

Q       But, not - - your ex-wife, okay.

A       Yeah.

Q       How do you help her?

A       Well, she's not allowed to drive right at the moment, so I take  her to all of her doctors appointments and needs that she has that needs to be taken care of at the time that the doctor asks to be done or whatever.

Q       Okay.  Cleaning, grocery shopping?

A       Yes, I do - - we both do that together, sir.

                          *                    *                    *

Q       What makes for a bad day?

A       Bad days are - - it just depends.  I get up, move around, go out, mess around in the yard a little bit, start hurting.  And I just do in and lay down for a little and it straightens up a little bit, and I'll watch TV.  And mostly just walking, sometimes sitting, it just - - it don't make - - it's funny somehow because it just don't make no difference.  Just one thing could cause it to another one.  Like it's hurting right now like I'm sitting.

Q       Okay.  What do you think your comfortable level is on sitting?

A       Right now about a four.

Q       How long can you sit?

A       Right here, probably - -

Q       Just average.

A       Average, I just keep moving around mostly all the time.

Q      Okay.  You're up and down a lot?

A      Yes, sir.

                              *              *              *

Q      Okay.  Do you do anything at home to help with your pain?

A      I walk.  I take walks and stuff and take the medication, but I do a little bit of
walking and a little bit of weed-eating, which I do that - -

Q      I would that would help.  Well, what about heating pads or ice, things like that?

A      No, sir.  I don't use none of that.

Q      All right.  You don't use a weed-eater to help your pain, do you?

A      Well, no.  I just do that for - -

Q      Just go get some exercise?

A      - - to do - - yes, sir.  Usually - -

Q      Okay.  Any problem driving?

A      Sometimes, sir, it bothers me a little bit, but not a whole lot.

                              *              *              *

Q      When you say that you ride the lawnmower, I mean how big of a yard do you
have?

A      We have less - - it's not even a quarter acre - -

Q      So - -

A      - - or so.

Q      - - it's a short spurt?

A      Yeah, I can mow it within 45 minutes to an hour.

Q       Do you have to stop?

A       Yeah, several times.

Q       Okay.  And as far as weed-eating, is that something you do very often?

A       No, my son usually does most of that.  I just do it just right around the edge of the trailer and the house to where I'm afraid he's going to beat it up.

*                *                *

[EXAMINATION OF VOCATIONAL EXPERT BY ALJ]

Q       Do you - - have you determined that Mr. Harlow's past work is as a boilermaker?

A       Yes.

Q       For the past 15 years at least?

A       Twenty-nine years wasn't it?

Q       Yeah.  Well, I mean I'm just concerned about - -

A       Yeah, 15.  You're taking the cutoff point.

Q       Right.  Can you describe that work?

A       Yeah, according to the DOT, boilermaker is at the heavy exertional level.  It has an SVP of 7, which places it in a skilled range of work activity.  Do you want the number?

Q       Yeah.

A       869.664-014 of the DOT.

Q       Okay.

A       And I don't see any transferable skills growing out of his past work.

Q       All right.  Let's have a hypothetical, Mr. Jones, of a younger individual in his mid-40s, mid to late 40s, has a high school education, has that work history.  This hypothetical would

be limited to no more than 20 pounds occasionally, 10 pounds frequently.

A        Um-hum.

Q        No ladders, ropes, or scaffolds, would be able to occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  Pain would allow for only occasional reaching overhead.  Need to avoid concentrated exposure to extreme cold as well as hazardous work sites.  This person does have pain that's noticeable, but he would be able to stay on task as far as this hypothetical is concerned.  I take it the light work would rule out Mr. Harlow's past work?

A        Yes.

Q        Would there be other work in the region or national economies that exist that this person would be able to perform in your opinion?

A        First position I would advance would be that of bander, paper goods, which is found in 920.687-026 of the DOT.  It's at the very light level, has an R1-M1-L1 educational development profile.  Nationally, there's 33,412.  Regionally, there's 1,480.  That would be the first position I would advance.

Q        Um-hum.

HR:      What's the region?

VE       Pardon?

HR       The region?

VE       Region three, yeah.  Do you want to know the states?  Kentucky, Ohio, and West Virginia.  Second position I would advance would be that of a pricer, wholesale retailer work activity.  That's found in 209.587134 of the DOT.  It's light exertional level, has an SVP of 2, which is unskilled entry-level type work activity, one-two step.  Nationally, 48, 460, region of

three, which is Ohio, Kentucky, and West Virginia, there's 2,500 such positions. Those would be the two I'd advance thus far, Your Honor.

ALJ    If, as Mr. Harlow indicated today, the pain got so severe that he had to lie down at irregular times of the day at least two to three days of the week, would those jobs be available for that person?

VE    No. If that were the case and he had to lie down like that, he wouldn't be able to function in those jobs I've named nor in my opinion he wouldn't be able to work on a sustained basis in any job in the competitive labor market.

*          *          *

E.    Lifestyle Evidence

The following evidence concerning the Claimant's lifestyle was obtained at the hearing and through medical records. The information is included in the report to demonstrate how the Claimant's alleged impairments affect his daily life.

• Prepares sandwiches, microwave meals, and skillet meals (Tr. 90)

• Eats at restaurants (Tr. 90)

• Mows the grass (Tr. 90)

• Washes dishes and straightens the house (Tr. 90)

• Drives a car (Tr. 91)

• Shops for food (Tr. 91)

• Pays bills, maintains a savings and checking account, and counts change (Tr. 91)

• Watches television (Tr. 92)

• Smokes cigarettes (Tr. 274)

- Goes fishing and hunting (Tr. 277)

### III. The Motions for Summary Judgment

A.    <u>Contentions of the Parties</u>

Claimant contends that the ALJ's decision is not supported by substantial evidence. Specifically, Claimant asserts that the ALJ erred: (1) in failing to consider his mental impairments, and (2) in failing to consider his manipulative limitations.

Commissioner maintains that the ALJ's decision was supported by substantial evidence. Specifically, Commissioner contends that the ALJ properly considered the severity of Claimant's mental impairments and manipulative limitations.

B.    <u>The Standards</u>.

1.    <u>Summary Judgment</u>.  Summary judgment is appropriate if  "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  All inferences must be viewed in the light most favorable to the party opposing the motion.  <u>Matsushita Elec.  Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial."  <u>Anderson v.  Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).

2.    <u>Judicial Review</u>.  Only a final determination of the Commissioner may receive

judicial review.  See, 42 U.S.C. §405(g), (h); Adams v. Heckler, 799 F.2d 131,133 (4th Cir. 1986).

3.      Social Security - Medically Determinable Impairment - Burden. Claimant bears the burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(1), (d)(2)(A); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

4.      Social Security - Medically Determinable Impairment.  The Social Security Act requires that an impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques.  42 U.S.C. § 423(d)(1), (3); Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990); 20 C.F.R. §§ 404.1508, 416.908.

5.      Disability Prior to Expiration of Insured Status- Burden.  In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status.  Highland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(i), 423(c); Stephens v. Shalala, 46 F.3d 37, 39 (8th Cir.1995)).

6.      Social Security - Standard of Review.  It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence.  The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the court's judgment for that of the Secretary.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

7.      Social Security - Scope of Review - Weight Given to Relevant Evidence.  The Court must address whether the ALJ has analyzed all of the relevant evidence and sufficiently

explained his rationale in crediting certain evidence in conducting the "substantial evidence inquiry." Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). The Court cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence. Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984).

8.  Social Security - Substantial Evidence - Defined. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

9.  Social Security - Sequential Analysis. To determine whether Claimant is disabled, the Secretary must follow the sequential analysis in 20 C.F.R. §§ 404.1520, 416.920, and determine: 1) whether claimant is currently employed, 2) whether she has a severe impairment, 3) whether her impairment meets or equals one listed by the Secretary, 4) whether the claimant can perform her past work; and 5) whether the claimant is capable of performing any work in the national economy. Once claimant satisfies Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have listed impairments but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job. Rhoderick v. Heckler, 737 F.2d 714-15 (7th Cir. 1984).

C.  Discussion

I.

The ALJ's Evaluation Claimant's Mental Impairments

Claimant first argues the ALJ erred in failing to consider his anxiety, depression, and

"possible" learning impairment.  While Claimant appears to concede these impairments were not by themselves severe within the meaning of the Regulations, he argues that since they are medically determinable impairments the ALJ should have considered whether they are severe when added to his other impairments.  Commissioner contends the ALJ adequately considered any limitations arising from mental impairments.

The Court begins by noting the law requires Claimant to show a "medically determinable" impairment in order to obtain disability benefits.  42 U.S.C. § 423(d)(1)(A); Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  The Fourth Circuit has further held that "allegations of pain and other subjective symptoms, without more, are insufficient."  Craig, 76 F.3d at 592.

Where a Claimant produces evidence sufficient to demonstrate the existence of medically determinable impairments, the ALJ must consider "the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."  42 U.S.C. § 423(d)(2)(B).  "Congress explicitly requires that 'the combined effect of all the individual's impairments' be considered, 'without regard to whether any such impairment if considered separately' would be sufficiently severe."  Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989) (citation omitted).  The ALJ must "consider the combined effect of a claimant's impairments and not fragmentize them."  Id. at 50.

The ALJ did not explicitly consider Claimant's alleged impairments of depression, anxiety disorder, and learning impairment.  Commissioner argues Claimant does not have any medically determinable impairment of depression or a learning disorder.  Regarding Claimant's alleged anxiety disorder, Commissioner argues the ALJ adequately analyzed the limitations arising from this impairment.

The Court agrees with Commissioner that Claimant does not have a medically determinable impairment of depression or a learning disorder and therefore the ALJ was not required to consider them since they could not serve as a basis for disability. 42 U.S.C. § 423(d)(1)(A); Hurley v. Barnhart, 385 F. Supp. 2d 1245, 1256 (M.D. Fla. 2005). The only medical record mentioning depression comes in a brief statement by Dr. James Dauphin. (Tr. 227). Under the heading of "MEDICAL HISTORY," Dr. Dauphin writes "Positive for depression and right arm and knee surgery." Id. It is unclear how Dr. Dauphin came to this information. He surely did not diagnose depression himself since he works in orthopedics. Id. Indeed, the remainder of Dr. Dauphin's several-page evaluation deals with Claimant's physical ailments. (Tr. 227-29). The only other records pointing to depression come in subjective statements. (Tr. 93-94, 122-23). As noted above, however, subjective statements alone are insufficient to find a medically determinable impairment. Craig, 76 F.3d at 592. Based on this record, the Court agrees with Commissioner that Claimant does not have a medically determinable impairment of depression. Regarding Claimant's alleged learning problems, Claimant has pointed to nothing but his own subjective statements. Claimant's brief even refers to a "possible learning disorder." This is clearly insufficient to find a medically determinable impairment. Id. The ALJ was not required to consider these potential ailments.

On the other hand, Claimant's anxiety disorder is a medically determinable impairment. Commissioner's brief appears to concede this point. Even if it does not, the Court believes the record clearly establishes Claimant has a medically determinable anxiety disorder. Dr. Humphrey diagnosed Claimant with anxiety disorder. (Tr. 197-99). Claimant was prescribed Xanax to treat his anxiety. (Tr. 197). A psychiatric review technique conducted in August 2004 also found

Claimant had an anxiety disorder.  (Tr. 174).

Since Claimant has a medically determinable anxiety disorder, the ALJ should have discussed its effects.  Even if the anxiety disorder itself is not severe, it may be severe in combination with other impairments.  <u>Walker</u>, 889 F.2d at 49.  Therefore, this case should remanded so the ALJ may consider the effect of Claimant's anxiety disorder in combination with his other impairments.

## II.

### <u>The ALJ's Consideration of Claimant's Manipulative Limitations</u>

Claimant next asserts the ALJ erred in finding he does not have any manipulative limitations.  Claimant contends the ALJ should have accorded controlling weight to an opinion by Dr. Humphrey, who was Claimant's treating physician.  Dr. Humphrey opined that Claimant suffered from significant manipulative limitations.  Claimant also cites opinions from Dr. Dauphin and Dr. Minard.  Commissioner asserts the ALJ's decision is supported by substantial evidence.  Commissioner argues the ALJ properly concluded Dr. Humphrey's opinion was not entitled to controlling weight to find Claimant capable of light work.

A treating physician's opinion will be entitled to controlling weight under some circumstances.  The opinion must be (1) well supported by medically acceptable clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the case record.  20 C.F.R. § 416.972(d)(2).  A treating physician's opinion will be disregarded if persuasive contrary evidence exists.  <u>Evans v. Heckler</u>, 734 F.2d 1012 (4th Cir. 1984).  To decide whether an impairment is adequately supported by medical evidence, the Social Security Act requires that an impairment, physical or mental, be demonstrated by medically acceptable clinical

19

or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(1), (3); 20 C.F.R. § 404.1508; <u>Heckler v. Campbell</u>, 461 U.S. 458, 461 (1983); <u>Throckmorton v. Dep't of Health and Human Servs.</u>, 932 F.2d 295, 297 n.1 (4th Cir. 1990). Regardless of a physician's opinion, the ultimate legal determination of Claimant's impairments remains with the Commissioner. 20 C.F.R. § 404.1527(d)(2); (e)(2); <u>McLain v. Schweiker</u>, 715 F.2d 866, 869 (4th Cir. 1983).

Dr. Humphrey indicated Claimant suffered from manipulative limitations. Dr. Humphrey stated Claimant had "abnormal" fine and gross motor ability and coordination. (Tr. 157). He also wrote Claimant could not perform fine or gross coordination. (Tr. 158).

The ALJ found Claimant did not have any manipulative limitations. (T. 19). The ALJ declined to credit Dr. Humphrey's opinion. <u>Id.</u> The ALJ stated that he "has not given controlling weight to an opinion from the claimant's family physician, Dr. Humphreys [sic], as to the claimant's inability to work . . . that opinion is not supported by the objective medical evidence in the record." <u>Id.</u> The ALJ's findings will be upheld as long as they have substantial evidence to support them. <u>Hays</u>, 907 F.2d at 1456.

At this point the Court cannot say that substantial evidence supports the ALJ's decision not to credit Dr. Humphrey's assessment. The ALJ simply gave too little consideration to Dr. Humphrey's opinion. (Tr. 19). Dr. Humphrey was Claimant's treating physician. (Tr. 201). As such, his opinion was entitled to significant weight. <u>Johnson v. Barnhart</u>, 434 F.3d 650, 654 (4th Cir. 2005) (stating that "Courts often accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant"). The ALJ did not need to credit Dr. Humphrey's opinion if other persuasive evidence existed. <u>Mastro v. Apfel</u>, 270 F.3d 171, 178 (4th Cir. 2001).

Yet the ALJ only considered Dr. Humphrey's opinion for one sentence. (Tr. 19). Dr. Humphrey's opinion was certainly entitled to more consideration than that. As such, the issue should be remanded to the ALJ for further consideration of the weight that should be accorded to Dr. Humphrey's opinion.

### IV. Recommendation

For the foregoing reasons, I recommend that:

1.      Claimant's Motion for Summary Judgment be GRANTED and the case REMANDED to Commissioner for further consideration of the effect of Claimant's anxiety disorder in combination with other impairments and of the weight that should be accorded to the opinion of Claimant's treating physician, Dr. Humphrey.

2.      Commissioner's Motion for Summary Judgment be DENIED for the same reasons as stated above.

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the

Northern District of West Virginia.

DATED: January 4, 2007

<u>/s/ James E. Seibert</u>
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE